# Exhibit 1



**U.S. Department of Justice**

Criminal Division

*Washington, D.C. 20530*

No.:  12-01

Date:  September 18, 2012

**Foreign Corrupt Practices Act Review**

**Opinion Procedure Release**

The Department of Justice (the "Department") has reviewed the Foreign Corrupt Practices Act ("FCPA") Opinion Procedure Request of a U.S. lobbying firm (the "Requestor") that was submitted on February 15, 2012 (the "Request"), as well as supplemental information submitted by the Requestor, most recently on August 21, 2012.  The Requestor is a "domestic concern" under 15 U.S.C. § 78dd-2(h)(1)(B), and thus eligible to request an Opinion of the U.S. Attorney General, pursuant to 28 C.F.R. Section 80.4, regarding whether certain specified, prospective—not hypothetical—conduct conforms with the Department's present enforcement policy regarding the anti-bribery provisions of the FCPA.  The Requestor represents that the facts and circumstances are as set forth below.

The Requestor wishes to represent the Embassy of a foreign country (the "Foreign Country") to the United States and the Foreign Country's Foreign Ministry (collectively, the "Foreign Country Embassy") in its lobbying activities in the United States.  To facilitate that lobbying representation, the Requestor further wishes to contract with a third party (the "Consulting Company") to introduce the Requestor to the Foreign Country Embassy, to advise the Requestor on cultural awareness issues in dealing with the Foreign Country's officials and businesses, to act as the Requestor's sponsor in the Foreign Country, to help the Requestor establish an office in the Foreign Country, and to identify additional business opportunities for the Requestor in the Foreign Country.  One of the partners in the Consulting Company is a member of the royal family of the Foreign Country (the "Royal Family Member"), although he holds no position in the government.  The Requestor requests an FCPA Opinion Release regarding: (1) whether the Royal Family Member is a "foreign official" under the FCPA; and (2) whether the Requestor's proposed engagement with the Consulting Company would result in any enforcement action by the Department.

Based on the Department's review of the Request, as well as the additional information received from the Requestor, it is the Department's opinion that the Royal Family Member does not qualify as a foreign official under 15 U.S.C. § 78dd-2(h)(2)(A), so long as the Royal Family Member does not directly or indirectly represent that he is acting on behalf of the royal family or in his capacity as a member of the royal family.  Accordingly, based on the facts as represented by the Requestor, the Requestor's proposed engagement of the Consulting Company to assist in its potential representation of the Foreign Country Embassy in its U.S. lobbying efforts may go forward without enforcement action.  The Department does not opine about any other aspect of the proposed engagement.

Background

I.   The Requestor

The Requestor, which is a partnership engaged in lobbying activities, is organized under U.S. law and headquartered in the United States.  As such, it is a domestic concern under 15 U.S.C. § 78dd-2(h)(1)(B).

II.   The Consulting Company

The Consulting Company is a limited liability company located in both the United States and the Foreign Country.  The Consulting Company has three partners, one of which is the Royal Family Member.

The Royal Family Member holds no title or position in the government, has no governmental duties or responsibilities, is a member of the royal family through custom and tradition rather than blood relation, and has no benefits or privileges because of his status.  The Royal Family Member has held only one governmental position in the Foreign Country: in the late 1990s, he served for less than twelve months in a position overseeing a governmental construction project.

Other than this one previous governmental position, the Royal Family Member does not act—and has never acted—in any capacity for, or on behalf of, the Foreign Country, or any department, agency, or instrumentality of the Foreign Country.  The Royal Family Member has also never had any role in any public organization.  The Royal Family Member's position in the royal family does not put him in line to ascend to any governmental post.

Any private sector company planning to open an office or operate a business in the Foreign Country is required by law to have local sponsorship.  The Royal Family Member has sponsored numerous foreign companies wishing to do business in the Foreign Country.  In his work on behalf of these foreign companies, the Royal Family Member interacts in his personal capacity (i.e., not on behalf of the royal family) with government officials of the Foreign Country who are not themselves members of the royal family.

III.   The Requestor's Engagement of the Consulting Company

The Requestor wishes to provide the Foreign Country Embassy with lobbying, business development, and policy services in the United States.

At present, neither the Requestor nor anyone from the Consulting Company, including the Royal Family Member, has had any contact with any member of the Foreign Country Embassy or any other governmental agency regarding the proposed engagement.  The Foreign Country's Ambassador to the United States will personally make the decision whether to retain the Requestor.  Once the Ambassador makes a decision, he will then forward his recommendation to the Foreign Country's Foreign Minister for his formal approval.  If approved,

the subsequent agreement will then be signed by the Ambassador on behalf of the Foreign Country's government.  The Royal Family Member does not have any relationship—familial, professional, or personal—with the Ambassador and does not personally know the Ambassador. The Royal Family Member also does not have any relationship—familial, professional or personal—with the Foreign Minister but is an acquaintance.

In this engagement, the Requestor would monitor actions taken by the U.S. Congress and the U.S. Administration that could impact the Foreign Country, present analyses of those activities, and recommend appropriate courses of action.  As necessary, the Requestor would then engage in lobbying services for the Foreign Country related to U.S. governmental activity. The Requestor would also introduce Foreign Country officials to Members of Congress and Administration officials who may be able to take appropriate actions that may help improve the Foreign Country's economic and business relationship with the United States.  Those contacted would also be asked to raise awareness within the United States about the Foreign Country and improve the Foreign Country's image with the people of the United States.  The Requestor would create a strategic plan to raise the Foreign Country's visibility in the United States.  The Requestor and the Consulting Company would create culturally appropriate promotional materials to complement this strategic plan.

A.  The Consulting Company's Services

The Requestor wishes to retain the Consulting Company to introduce the Requestor to the Foreign Country Embassy and assist the Requestor in providing services to the Foreign Country Embassy.  Under the terms of the proposed agreement between the Requestor and the Consulting Company,[1] the Consulting Company would provide "strategic advice and counsel on public policy and business development issues of interest to the [Foreign Country Embassy], as well as make selected liaisons with U.S. and [Foreign Country] interlocutors on behalf of the [Foreign Country Embassy]."  The Requestor believes that the Royal Family Member's experience and expertise in matters relating to the Foreign Country are essential to its successful lobbying efforts on behalf of the Foreign Country Embassy.

In addition to these services, the Consulting Company may also work to identify additional business opportunities in the Foreign Country for the Requestor.  Any such additional work would be the subject of a separate engagement letter between the Requestor and the Consulting Company.

B.  The Structure and Payment Terms of the Agreement

The proposed agreement between the Requestor and the Consulting Company includes the Consulting Company's representation that "none of its members, or principals are 'foreign

---

[1] The proposed agreement also provides that "[b]oth [the Requestor] and [the Consulting Company] agree that [the Requestor] will submit this proposed contract to the United States Department of Justice ('DOJ') for review under its Foreign Corrupt Practices Act ('FCPA') Opinion Procedure and that this agreement will not become effective until such approval is received."

officials' as that term is defined in the FCPA." The Consulting Company "further represents that its principals and members are familiar with, and agree to abide by, the FCPA and all U.S. and [Foreign Country] anti-bribery and anticorruption laws." [2]  In addition, the Consulting Company's principals have adopted the Good Practice Guidance on Internal Controls, Ethics and Compliance issued by the Organization for Economic Cooperation and Development (OECD) and have pledged that all partners and employees would be bound by the procedures covered in the Good Practices Guide.

Further, the Requestor has committed that "to ensure this arrangement is transparent to the [Foreign Country] and the general public, full disclosure of [the Royal Family Member]'s relationship to the royal family will be made to all relevant parties in both the United States and the [Foreign Country]." The Requestor has also committed that, "[i]n the spirit of full disclosure, [the Consulting Company]'s name, and the names of its partners, will be included in [the Requestor]'s contract with the [Foreign Country], and [the Consulting Company] also will sign the contract."

The Foreign Country Embassy in the United States would pay the Requestor for its lobbying services through a retainer agreement. The Requestor and the Foreign Country Embassy would negotiate the monthly fee for the services to be provided. The Requestor has represented that it anticipates being paid within a typical range at the going fair market rate.

Pursuant to the terms of the proposed engagement contract between the Requestor and the Consulting Company, the Foreign Country Embassy would pay fees to the Requestor and, in turn, the Requestor would compensate the Consulting Company for the services it performs. The Requestor anticipates paying to the Consulting Company twenty percent of what it receives from the Foreign Country Embassy, so long as that percentage accurately reflects the amount of work provided. For each set of services the Consulting Company provides, the Requestor and the Consulting Company would agree in advance on the scope of the Consulting Company's work. For additional contracts, the percentage may be higher depending on the Consulting Company's role.

The Consulting Company would split its portion of the payment equally among its three partners, one of whom is the Royal Family Member. The amount paid to the Consulting Company by the Requestor would be on a pro-rata basis. The Requestor anticipates that the monthly payment to each of the three principals would likely be approximately $2,000.

The Requestor represents that the fee it anticipates paying to the Consulting Company is at or below that charged by other entities, including the Requestor itself, for similar services.

Although the Requestor anticipates contracting with the Foreign Country Embassy and the Consulting Company separately, it has represented that there is no provision of the Foreign Country's law that would prohibit the Foreign Country Embassy from directly contracting with

---

[2] The Foreign Country has signed and ratified the United Nations Convention Against Corruption ("UNCAC"). UNCAC prohibits bribery of both domestic and foreign public officials.

or paying the Consulting Company or the Royal Family Member.  The Requestor has represented that it prefers the current arrangement, under which the Foreign Country Embassy would retain the Requestor and the Requestor would in turn retain the Consulting Company.

Analysis

The FCPA prohibits any domestic concern from corruptly giving or offering anything of value to any "foreign official" in order to assist "in obtaining or retaining business for or with, or directing any business to, any person . . . ."  15 U.S.C. § 78dd-2(a)(1).  Because it is organized under the laws of a U.S. state and has its principal place of business in the United States, the Requestor is a "domestic concern" within the definition of 15 U.S.C. § 78dd-2(h)(1)(B), and is, therefore, subject to the anti-bribery provisions of the FCPA.

The FCPA defines a "foreign official," in relevant part, as "any officer or employee of a foreign government or any department, agency, or instrumentality thereof, . . . or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality . . . ."  15 U.S.C. § 78dd-2(h)(2)(A).  A person's mere membership in the royal family of the Foreign Country, by itself, does not automatically qualify that person as a "foreign official."  Rather, the question requires a fact-intensive, case-by-case determination that will turn on, among other things, the structure and distribution of power within a country's government; a royal family's current and historical legal status and powers; the individual's position within the royal family; an individual's present and past positions within the government; the mechanisms by which an individual could come to hold a position with governmental authority or responsibilities (such as, for example, royal succession); the likelihood that an individual would come to hold such a position; an individual's ability, directly or indirectly, to affect governmental decision-making; and numerous other factors.

The Department concludes that the Royal Family Member does not presently qualify as a foreign official.[3]  Although no reported decisions or any of the Department's previous opinion releases have answered precisely the question at issue here—whether a member of the particular Foreign Country's royal family is *per se* a "foreign official" for purposes of the FCPA—an earlier FCPA Opinion Release and district court decisions lend support to our conclusion that, in this context, and at this time, the Royal Family Member is not a foreign official for purposes of the FCPA.

In FCPA Opinion Release 10-03 (Sept. 1, 2010), the Department stated its lack of enforcement intent against a domestic concern that wished to hire a consultant to assist in

---

[3] Separately, we note that the FCPA prohibits providing anything of value to third parties who are not themselves a foreign official as an indirect means to corruptly influence a foreign official. *See, e.g., United States v. Liebo*, 923 F. 2d 1308, 1311 (8th Cir. 1991).  Thus, while it does not appear on the facts represented by the Requestor that payments by the Requestor to the Royal Family Member would improperly influence foreign officials to award business to the Requestor, this opinion does not foreclose the Department from taking enforcement action should an FCPA violation of this indirect type or any other occur during the performance of the proposed engagement.

5

proposing a novel natural resource infrastructure development to a foreign government. The consultant had past and present contracts to represent that same foreign government and to act on its behalf, including marketing for the Ministry of Finance and lobbying in the United States. The consultant agreed to put in place a number of safeguards, including walling off its employees involved in representing the foreign government from those representing the domestic concern and foregoing new representations of the foreign government. The domestic concern also represented to the Department that the consultant had no decision-making authority on behalf of the foreign government and that it would disclose its arrangement with the consultant to the foreign government's Ministry of Finance. The Department concluded that the consultant did not qualify as a foreign official because the consultant was "not acting on behalf of the foreign government" in its work for the domestic concern.

District court decisions addressing whether a state-owned entity may be an "instrumentality" of a foreign government are also instructive for identifying the characteristics of a "foreign official" under the FCPA.[4]  In these cases, courts applied a fact-based analysis that focused on several factors, such as those articulated in *United States v. Carson,* et al., No. 09-cr-00077 (C.D. Cal. 2011):

- The foreign state's characterization of the entity and its employees;

- The foreign state's degree of control over the entity;

- The purpose of the entity's activities;

- The entity's obligations and privileges under the foreign state's law, including whether the entity exercises exclusive or controlling power to administer its designated functions;

- The circumstances surrounding the entity's creation; and

- The foreign state's extent of ownership of the entity, including the level of financial support by the state (e.g., subsidies, special tax treatment, and loans).

*Id.*, ECF 373 at 5.

Applying both FCPA Opinion Release 10-03 and district court decisions regarding the meaning of "instrumentality," whether a member of a royal family is a "foreign official" turns on such factors as (i) how much control or influence the individual has over the levers of governmental power, execution, administration, finances, and the like; (ii) whether a foreign government characterizes an individual or entity as having governmental power; and (iii)

---

[4] As noted above, the FCPA's definition of "foreign official" includes an "instrumentality" of a foreign government.  *See* 15 U.S.C. § 78dd-2(h)(2)(A).  *See, e.g.*, *United States v. Carson,* et al., No. 09-cr-00077 (C.D. Cal. 2011); *United States v. Aguilar,* et al., No. 10-cr-1031 (C.D. Cal. 2011); *United States v. Esquenazi,* et al., No. 09-cr-21010 (S.D. Fla. 2010).

whether and under what circumstances an individual (or entity) may act on behalf of, or bind, a government.  This inquiry is fact-intensive and no single factor is dispositive.

In the Department's opinion, in light of the representations made by the Requestor recited above, this member of this particular royal family is not a foreign official—so long as he does not directly or indirectly represent that he is acting on behalf of the Royal Family or in his capacity as a member of the Royal Family.  As represented by the Requestor, the Royal Family Member presently has no official or unofficial title or role in the Foreign Country's government, nor does he have any official or unofficial power over any aspect of the Foreign Country's governmental decision-making process, executive function, administration, finances, or, indeed, any aspect whatsoever of the government, including specifically the direct or indirect power to award the business the Requestor seeks.  The Royal Family Member also cannot, by virtue of his membership in the royal family, ascend to a governmental position and has no benefits or privileges because of his status as a Royal Family Member.  Further, the Royal Family Member has no relationship—personal, professional, or familial—with the decision-makers in the Foreign Country's Embassy and the Foreign Country's government who will decide whether to award the business the Requestor seeks.  In light of these representations, the Royal Family Member has no power to affect the Foreign Country government's award of the engagement the Requestor seeks.  Moreover, there is no indication on the facts presented by the Requestor that, at present, the provision of benefits to the Royal Family Member would corruptly influence other members of the Foreign Country's royal family, or officials of the Foreign Country, to award business to the Requestor improperly.

In declining to take enforcement action, the Department has also considered the steps that the Requestor and the Consulting Company have taken here to comply with the FCPA and other anti-bribery laws.  While the Requestor has taken these steps to reduce the risk of an FCPA violation, the Department does not opine on any future business relationship between the Requestor and the Consulting Company, or on any aspect of the relationship beyond whether the Royal Family Member is a foreign official.

Accordingly, with respect to the proposed engagement with the Consulting Company in connecting with the lobbying activities on behalf of the Foreign Country Embassy, based on the representations made in the Request and recited above, as well as the Department's review of supplemental materials submitted by the Requestor, the Department does not presently intend to take enforcement action.  While it does not appear on the facts represented by the Requestor that payments by the Requestor to the Royal Family Member would improperly influence foreign officials to award business to the Requestor, this opinion does not foreclose the Department from taking enforcement action should an FCPA violation of any type occur during the performance of the proposed engagement.

This FCPA Opinion Release has no binding application to any party that did not join in the Request, and can be relied upon by the Requestor only to the extent that the disclosure of facts and circumstances in its Request is accurate and complete.