# Exhibit 5

Rio Tinto

January 2012
www.riotinto.com

# Business integrity (anti-corruption) standard

## Table of contents

**Top things you must know** — 1

**Introduction** — 3

**Group integrity and compliance commitment** — 5

**General definitions** — 6

**Part A – Matters for all** — 9
1.0 Bribery, corruption and extortion — 9
2.0 Gifts, entertainment, travel and per diem reimbursements — 10
3.0 Political involvement — 23
4.0 Charitable donations and sponsorships — 24
5.0 Reporting bribery, corruption and violations — 27

**Part B – Further matters for Group business management** — 28
6.0 Reporting to senior levels and investigations — 28
7.0 Books and records and internal controls — 29
8.0 Compliance risk reduction training — 30
9.0 Business partner ventures — 32

### Top things you must know

**Matters for all**

- Rio Tinto prohibits bribery and corruption in all forms.
- Gifts, entertainment, travel and per diem reimbursements must not be given or received as a reward or encouragement for preferential treatment.
- Rio Tinto does not participate in party politics. It does not make payments to political parties or individual politicians.
- Rio Tinto does not make charitable donations or sponsorships that could be perceived as bribes or payments to gain an improper business advantage.
- Everyone at Rio Tinto has a responsibility to report violations of this Standard.[1]

**Further matters for Group business management**

- Rio Tinto will investigate all suspected violations.
- Rio Tinto's books and records must be accurate.
- Employees in potential high exposure roles must undertake training to reduce the risks of non-compliance with this Standard.
- Rio Tinto wants all businesses in which it has an interest to adopt and apply anti-corruption standards similar to this Standard.

[1] Subject to local laws

## Introduction

| | |
|---|---|
| **What is this Standard?** | This Standard contains mandatory requirements that Group businesses must integrate into their Group business compliance programme. |
| **Who does the Standard apply to?** | All Group businesses, employees and core contractors (which can include consultants and other service providers) in the Rio Tinto Group must comply. Failure to comply may result in discipline up to and including termination. There may also be civil and criminal penalties. |
| **What happens if I comply but we lose business?** | Rio Tinto fully supports its employees and core contractors who comply with this Standard. No employee or core contractor will suffer for refusing to engage in conduct that violates this Standard if we lose business as a result. If this Standard differs from local law, Rio Tinto will comply with whichever is more stringent. |
| **When does this Standard start?** | This Standard comes into effect on 1 January 2012 unless otherwise advised by the global head of Compliance. |
| **Who owns this Standard?** | Rio Tinto Compliance. |
| **Who is accountable for this Standard?** | Each Group executive must implement and enforce this Standard in their Group business. |
| **Where can I get more information?** | The *Anti-corruption toolkit* contains templates and guidance notes to assist Group businesses. The toolkit is located on the *Prospect* portal (Compliance community). |
| | If you have any questions as to whether any conduct meets this Standard or complies with applicable laws, speak to your line manager and/or contact Rio Tinto Compliance. Contacts are listed on the *Prospect* portal (Compliance community). |
| | If you have any feedback on this Standard or supporting documents, please send an email to compliance6@riotinto.com |
| **Definitions** | Defined terms which are used only in one section appear at the start of that section. Terms used in more than one section appear in the Definitions section. |

## Group integrity and compliance commitment

Rio Tinto's commitment to integrity and compliance is set out in *The way we work*:

"Each of us has a responsibility to work with integrity when acting on behalf of Rio Tinto… In every country in which we operate, all Rio Tinto personnel are expected to comply with the law, *The way we work* and Rio Tinto policies and standards. Ignorance of the law is not an acceptable reason for non-compliance, so we must all be familiar with the applicable laws that relate to our work."

This commitment flows from our core values. It enables us to be the employer and neighbour of choice. It helps us to comply with the law and is critical to the long term success of our business.

To support this commitment and to create a robust and transparent culture of integrity and compliance, we have implemented a Group wide Integrity and Compliance Programme. This *Business integrity (anti-corruption) standard* is a key component of that Programme.

## General definitions

**Associate** includes:

- a person with whom personal business is conducted;
- a close friend;
- a person who is a trustee of a trust in relation to which the employee or core contractor may benefit; or
- a director or officer of a company or other entity over which the employee or core contractor has substantial control.

**Core contractor** means contractors, consultants and other service providers who are 'Category 1 contractors' and any others as determined by a Group business to require compliance training.

NOTE:
Guidance on this term is provided in the *Anti-corruption guidance notes*.

**Contractor** includes those individuals who are temporary hires through an agency or firm.

**Employee** includes directors, officers and staff (whether permanent or casual, full time or part time) and temporary hires employed directly by the Rio Tinto Group but does not include contractors.

**GBCP** means a Group business compliance programme that meets the requirements set out in the *Compliance standard*.



Rio Tinto Business integrity (anti-corruption) standard

## General definitions continued

**Government official** includes:

- an official or employee of a government or government owned enterprise;
- an official or employee of a government agency or regulatory authority;
- an official or employee of a political party or a political candidate;
- any official or employee of a international public organisation such as the United Nations, World Bank or International Monetary Fund;
- a member of the judiciary or magistracy;
- an individual who holds or performs the duties of an appointment, office or position created by custom or convention, including some members of royal families and some tribal leaders;
- a person who is, or holds themselves out to be, an authorised intermediary of a government official; or
- a relative or associate of such a government official.

NOTES:

a) "Government officials" include police officers, customs and tax officials, employees of state owned enterprises, political party officials as well as children or other relatives of a government or political party official.

b) If you are in doubt as to whether a person is a government official or the entity is a government owned enterprise, you should consult Rio Tinto Compliance.

**Group business** means:

- a Rio Tinto product group; or
- the collection of global functions under the management of a Group executive.

**Group executive** means the product group chief executive or, in the case of global functions, their executive sitting on the Rio Tinto Executive committee.

**Internal controls** include *The way we work*, policies, standards, and other internal controls designed to ensure compliance obligations are met and compliance risks are managed.

**Nominated country** is one with a score of less than 6.5 on the most recent Transparency International (TI) corruption perceptions index.

**Relative** means an immediate family member and includes a spouse, partner, parent, child and sibling whether by blood, marriage or adoption (including in-laws) and includes anyone residing in a person's home (other than a tenant or domestic employee).

**Rio Tinto, Rio Tinto Group,** or **Group** means Rio Tinto plc, Rio Tinto Limited and any business which is directly or indirectly wholly or majority owned, or managed, by Rio Tinto plc or Rio Tinto Limited.

NOTE:

This definition does not include entities such as Queensland Alumina Limited, where neither Rio Tinto plc nor Rio Tinto Limited are majority owners. If you are in doubt as to whether an entity is part of the Rio Tinto Group, please contact Rio Tinto Legal for advice.

**Rio Tinto personnel** means Rio Tinto's employees and core contractors.

## Part A – Matters for all

### 1.0 Bribery, corruption and extortion

*Rio Tinto prohibits bribery and corruption in all forms.*

For the purposes of this section, the following definition applies:

**Facilitation payments** are unofficial payments (usually involving a small amount) to a government official (often at a low level) to secure or expedite a routine action or service to which an individual or company is entitled. They are prohibited.

**Bribery is prohibited.** Rio Tinto personnel must not commit, or be a party to, or be involved in bribery or corruption.

You cannot, directly or indirectly, offer, promise, give, demand or accept any bribe or other undue advantage in order to obtain, retain or direct business or secure any other improper advantage in the conduct of business. This applies whether dealing with government or with private individuals or enterprises.

**Facilitation payments are prohibited.** Rio Tinto personnel must not offer or make facilitation payments, directly or indirectly, to government officials.

**Never make a payment to a government official except as set out in this Standard.** Rio Tinto personnel must not make payments to a person who is a government official except as set out in this Standard.

NOTE:
Guidance on legitimate payment to governments is provided in the *Anti-corruption guidance notes*.

**Payments to protect your safety are permitted.** When Rio Tinto personnel face extortion demands that involve explicit or implicit threats to personal safety, they may make payments which would otherwise be prohibited. In such circumstances, the Group business must ensure that such payments are:

- recorded in Rio Tinto books of account accurately as extortion payments made to preserve personal safety; and

- reported as quickly as reasonably practicable to the relevant Group executive, global head of Compliance and head of Global Security.

### 2.0 Gifts, entertainment, travel and per diem reimbursements

*Gifts, entertainment, travel and per diem reimbursements must not be given or received as a reward or encouragement for preferential treatment.*

For the purposes of this section, the following definitions apply:

**Benefit** means gifts, entertainment and travel.

NOTE:
This term does not include per diem reimbursements.

**Country limit** means the limit set for a country as it appears on the *Prospect* portal (Compliance community) – anti-corruption page.

**Entertainment** excludes reasonable (non-lavish) meals that are associated with promoting, demonstrating or discussing Rio Tinto's business.

**Expense management system** means the system(s) used by a Group business to process expense claims by employees.

**Gifts** mean anything of value given or received where the recipient does not pay fair market value.

**Per diem reimbursement** means a payment (normally calculated on a daily basis) that genuinely estimates the reasonable cost of travel, meals, accommodation and other reasonable costs that a third party will incur to attend a Rio Tinto business meeting or event.

Rio Tinto Business integrity (anti-corruption) standard

11_12

## 2.0 Gifts, entertainment, travel and per diem reimbursements continued

### Summary table for benefits

| Value (when all other requirements are met) | Record? | Pre-approval required? |
|---|---|---|
| nominal value** | No | No |
| < Country limit | Yes | No |
| > Country limit | Yes | Yes; your manager |
| > 2 x Country limit | Yes | Yes; Band C or above |

**Generally, below 25 per cent of country limit. See paragraph 2.5 below.

NOTE:
For each country, there will be a limit in respect of government officials and another in respect of other third parties. Refer to paragraph 2.7.

### 2.1 Gifts, entertainment or travel benefits can be bribes

Gifts, entertainment, travel and per diem reimbursements must **not** be provided or received, directly or indirectly, with the intention or effect of improperly obtaining, retaining or directing business or securing any improper advantage in the conduct of business.

**Any benefit must be permitted by local law and policies of third parties.** Rio Tinto personnel must not promise, offer or give to third parties any benefit that local law and the known policies of the third party's employer prohibit. Similarly, they must not accept or receive any benefit that local law and the known policies of the third party's employer prohibit.

**Never give cash.** You must not give money or cash equivalents (such as gift cards, certificates or coupons) as gifts or in lieu of entertainment or travel.

NOTE:
In a very few situations it is customary to make cash payments (eg funerals in Japan). This course may be pre-approved by a line manager who is Band C (managing director/president) or above.

## 2.0 Gifts, entertainment, travel and per diem reimbursements continued

**All benefits** that you promise, offer or give to, or accept or receive from, third parties must:

- be given or received in the name of Rio Tinto and not in the personal name of the employee or core contractor;
- be customary, in type and value, in the relevant country and be given or received at an appropriate time or season and/or in appropriate circumstances;
- be given or received openly; and
- not be given to, or received from, a person who has been given, or has received, benefits more than three times within a 12 month period.

NOTE:
Where a third party offers benefits to a group of employees or core contractors, the most senior person present may seek approval as required under this Standard for the whole group.

**Entertainment of third parties.** All entertainment that you promise, offer or provide to third parties must:

- have the Rio Tinto host present, ie the Group business employee or core contractor giving the entertainment;
- involve executing or performing a contract or be in the normal course of promoting, demonstrating or explaining Rio Tinto's business; and
- for:
  – government officials, and
  – other third parties, where the entertainment is lavish (such as an invitation to sporting or cultural events where tickets are expensive or keenly sought, eg tennis tournament or World Cup finals or first nights at concerts or shows),

be preceded by:
a) written invitation describing the arrangements from Rio Tinto to the employer of the recipient being offered the entertainment, and

b) written acceptance from that employer.

**Travel for third parties.** All travel (including accommodation and other associated expenses) that you promise, offer or provide to third parties must:

- involve executing or performing a contract or be in the normal course of promoting, demonstrating or explaining Rio Tinto's business;
- be provided to appropriate individuals;
- for:
  – government officials, and
  – other third parties, where the travel is interstate or international,

be preceded by:
a) written invitation describing the arrangements from Rio Tinto to the employer of the recipient being offered the travel, and

b) written acceptance from that employer;

- be at a level no greater than permitted for equivalent Rio Tinto employees;
- not include travel (or accommodation) for a relative, associate or other guest of the recipient; and
- not include paid or reimbursed stopovers.

NOTE:
If there is a decision pending within the next 12 months from a government official or their employer, you **cannot** provide a benefit to that official without the prior approval of a manager (Band C or above) as set out in paragraph 2.2.

## 2.0 Gifts, entertainment, travel and per diem reimbursements continued

### 2.2 When are approvals for benefits needed?

**Summary flowchart for approvals of benefits**



**Benefit ≤ Country limit** → No prior approval required

**No approval:** If **all** the rules in paragraph 2.1 are met **AND** the benefit is of a value equal to or less than the country limit, then you do not need prior approval from a manager **under this Standard**.

NOTE:
Even when this Standard does not require prior approval, the Group business may have requirements that you must meet.

**Country limit < Benefit < 2x Country limit** → Manager's **prior** approval

**Manager's prior approval:** If **all** the rules in paragraph 2.1 are met **AND** the value of the benefit is more than the country limit but less than twice the country limit, then the Rio Tinto personnel giving or receiving the benefit must obtain the prior approval of their manager.

**Benefit ≥ 2x Country limit** → Band C (managing director/president) or above **prior** approval

**All** the rules in paragraph 2.1 have been met —— No ——→

**Band C (managing director/president) prior approval:** If **all** the rules in paragraph 2.1 are **not** met **OR** the value of the benefit is twice the country limit or greater, then the Rio Tinto personnel giving or receiving the benefit must obtain the prior approval of their line manager who is Band C (managing director/president) or above.

The above flowchart sets out the approvals required in this paragraph 2.2 for benefits.

NOTES:
a) **Prior approval** must be **in writing** (which can include email). It must be obtained **before** a benefit is promised, offered or given. Where possible, it must be obtained before a benefit is accepted by Rio Tinto personnel – if that is not possible, then as soon as possible.

b) **No one is authorised to approve any benefit that is or may be a bribe – see the first sentence of paragraph 2.1.**

## 2.0 Gifts, entertainment, travel and per diem reimbursements continued

2.3 Per diem reimbursements to third parties

NOTES:

a) Payment of per diem reimbursements is exceptional. Rio Tinto **discourages** such payments. However, in limited circumstances, it is acceptable to make such payments.

b) All per diem reimbursements need to be separately recorded. They cannot be handled solely through the expense management system.

**Approval for per diem payments to third parties is always required.** If the per diem reimbursement is for a non-government official and meets all the above requirements, then you must obtain prior approval in writing from your manager. For government officials, you must obtain prior approval from a line manager who is Band C (managing director/president) or above.

NOTES:

c) **Prior approval** must be **in writing** (which can include email) and obtained **before** the per diem reimbursement is promised, offered or given.

d) Remember "government official" includes employees of government owned enterprises.

e) **No one is authorised to approve any per diem reimbursement that is or may be a bribe – see the first sentence of paragraph 2.1.**

**The payment of per diem reimbursements to third parties must:**

- **not** be made to influence a third party in order to improperly obtain or retain business, or for favours or benefits;
- be permitted by local law and the known policies of the third party's employer;
- be customary, in type and value, in the relevant country;
- be made openly;
- be agreed in writing with the employer of the person receiving the per diem reimbursement;
- **not** include any reimbursement for a relative, associate or other guest of the recipient;
- **not** have been otherwise paid by Rio Tinto;
- be in connection with executing or performing a contract or be in the normal course of promoting, demonstrating or explaining Rio Tinto's business; and
- be of a value equal to or less than the country limit.

## 2.0 Gifts, entertainment, travel and per diem reimbursements continued

2.4 Rio Tinto personnel who receive offers of a per diem reimbursement require approval

Neither you nor your relative or associate can accept any per diem reimbursements from third parties due to your position at Rio Tinto without the prior written approval of:

- where the per diem is less than the country limit, your manager; or
- in any other case, a line manager who is Band C (managing director/president) or above.

Any such per diem reimbursement must be properly and transparently recorded and documented. All payments must be made to the Group business.

2.5 Make sure you record benefits and per diem reimbursements

You must accurately record all benefits provided to, or received from, third parties in the books of the Group business, **unless** they are of purely **nominal** value. All per diem reimbursements must be accurately recorded in the books of the Group business.

NOTE:

Examples of benefits that are of purely nominal value are included in the *Anti-corruption guidance*. Generally, values below 25 per cent of the country limit would be nominal.

**The records must include** the following details:

- whether it is a gift/entertainment/travel/per diem reimbursement;
- its nature and purpose;
- date it was given or received;
- amount and/or value of the benefit/s (per recipient) and for per diem reimbursements, the basis on which the calculation was made;
- status of the non Rio Tinto recipient/giver – a commercial entity/individual or a government/government entity/official; and
- details on the non Rio Tinto recipient/giver – full name, title, department and commercial entity/government authority.

**Where the benefit requires the prior approval of a manager or the payment is a per diem reimbursement,** the records must also include:

- details of any other benefit that you provided to, or received from, the non Rio Tinto recipient/giver in the previous 12 months;
- copies of approvals required under this Standard; and
- details of any action or oversight with respect to Rio Tinto that person has had in the past 12 months or likely will have during the next 12 months.

## 2.0 Gifts, entertainment, travel and per diem reimbursements continued

A Group business may elect to record **benefits given or received in its expense management system or in a register(s)** maintained for that purpose. Per diem reimbursement must be made in a register(s) maintained for that purpose. The register(s) becomes part of the books and records of the Group business.

NOTES:

a) A template register is provided in the *Anti-corruption toolkit*.

b) All entries in the expense management system for benefits provided by or to employees and core contractors must be fully documented including any required written approval and related supporting documentation (including all receipts, invoices and bills, etc).

### 2.6 Determining the value of gifts and entertainment

The value of a gift must be calculated as the greater of:

- the actual cost (eg what it costs to buy the gift); and
- the fair market value of the gift (eg what a reasonable person would pay for the gift).

The value of entertainment is the total actual cost of the entertainment divided by the number of participants.

NOTE:
If the gift or entertainment is provided by a third party and the cost is unknown, reasonable estimates should be made as to the value.

### 2.7 Country limits

The Group executive with responsibility for a specific country and the global head of Compliance will determine levels for the country.

- The Group executive must communicate these limits to all relevant employees and core contractors in that country.

- The global head of Compliance must record such limits on the anti-corruption page of the Compliance *Prospect* portal (Compliance community).

NOTES:

a) For each country, there will be a limit in respect of government officials and another in respect of other third parties.

b) Where no country limits exist, the default limit set out in the *Prospect* portal (Compliance community) applies.

c) The country limits are applicable for visiting Rio Tinto personnel.

d) Nothing in this Standard restricts any Group business from imposing lower limits for its employees and core contractors in a country. In that case, the lower limits must be clearly and regularly communicated to relevant employees and core contractors and advised to the global head of Compliance.

## 3.0 Political involvement

*Rio Tinto does not participate in party politics. It does not make payments to political parties or individual politicians.*

**We do not engage in politics.** Group businesses must not, directly or indirectly, participate in party politics or make payments to political parties, individual politicians or political candidates.

**Staff may engage in politics but only in their own capacity.** Group businesses must not restrict employees or core contractors from participating in the political process where they act purely as individual citizens and where the participation does not involve Rio Tinto funds, assets, resources, time or personnel.

**Exercise caution when appointing government officials.** Group businesses must not, without the approval of the Group executive:

- engage a politician or government official as a consultant; or
- appoint a politician or government official (or a politician or government official who has retired or resigned from office within the previous 12 months) to a company position.

NOTE:
Political action committees in the United States are discussed in the *Anti-corruption guidance notes*.

**Rio Tinto personnel must <u>not</u>:**

- use Rio Tinto funds, assets, resources, time or personnel, including in-kind contributions of supplies, equipment or services, to make any political contribution, or assist any political party, individual politician or political candidate;
- use Rio Tinto funds to make payments, loans, donations, or gifts to political parties, individual politicians or political candidates;
- use Rio Tinto funds to pay admission fees to conferences, dinners, or similar events organised by political parties, individual politicians, political candidates or their supporters, or to purchase their publications, where there is a fund raising element involved;
- provide politicians or political candidates or their staff with travel and accommodation other than in accordance with this Standard;
- use Rio Tinto funds to match contributions to political parties, individual politicians or political candidates;
- during Rio Tinto time or by using Rio Tinto funds, assets, resources or personnel, suggest to other employees or core contractors – directly or indirectly – that they support or contribute to political parties, individual politicians or political candidates; or
- use Rio Tinto funds to make payments to organisations which are fronts for political parties, individual politicians or political candidates, or which provide means to channel funds to them.

## 4.0  Charitable donations and sponsorships

*Rio Tinto does not make charitable donations or sponsorships that could be perceived as bribes or payments to gain an improper business advantage.*

NOTE:
Nothing in this section detracts from our goal of building enduring relationships with our neighbours that demonstrate mutual respect, active partnership, and long term commitment.

For the purposes of this section, the following definitions apply:

**Charitable donations** include donations to charitable organisations (including academic institutions such as universities), charitable contributions, charitable giving and philanthropic activities.

**Donations** mean small or large amounts of resources (time, financial, property or human) provided voluntarily to an organisation (charitable or otherwise) or individual person to support a cause or initiative with no expectation of commercial gain in return. Donations differ from sponsorships which provide commercial benefits.

**Sponsorships** refer to support for an event, initiative or organisation (including academic institutions such as universities) by providing financial, property and/or other resources, in return for certain rights, benefits or associations that may be exploited. Sponsorships are intended to be mutually beneficial. They may be small or large scale. Sponsorships may be a one off investment or part of a longer term commitment. They may be local sponsorships used to promote a commitment to a local community or reinforce Group values.

**Charitable donations and sponsorships must not be made to gain unfair advantages.** Charitable donations and sponsorships must be for legitimate purposes; they cannot be a bribe in disguise.

**Charitable donations must not be made to individuals.** Group businesses must only make charitable donations or sponsorships (and the associated payments) to incorporated community groups, clubs, associations, not-for-profit organisations, non-government organisations, other community related commercial organisations and/or academic bodies such as universities.

**Charitable donations and sponsorships must not be politically connected.** Group businesses must not make charitable donations to, or sponsor, organisations that are linked to political parties or politicians.

Charitable donations and sponsorships must be:

- permitted by local law;
- accurately recorded in the Group business' accounting records;
- for charitable or community purposes; and
- pre-approved by a Band C (managing director/president) or above.

Sponsorships must be transparently documented in an agreement with the organisation.

## Part B – Further matters for Group business management

### 6.0  Reporting to senior levels and investigations

*Suspected violations must be investigated.*

**Notify the right people when issues arise.** Group businesses must ensure that managers escalate matters reported by Rio Tinto personnel. Managers must report any suspicion, allegation, report or occurrence of violation of this Standard as if they were frauds – see section 3.3.1 of the *Fraud standards*. In addition, a Group business must report to the global head of Compliance and the head of Corporate Assurance immediately if in its judgment the matter represents a serious breakdown in internal controls – see section 3.4.1 of the *Fraud standards*.

**Investigations by Group businesses.** A Group business must conduct an investigation of all such matters – see paragraphs 4.1.4 to 4.1.13 of the Rio Tinto *Compliance standard* and the *Standards for investigations into allegations of serious wrongdoing*.

### 5.0  Reporting bribery, corruption and violations

*Everyone at Rio Tinto has a responsibility to report violations of this Standard.[2]*

For the purposes of this section, the following definition applies:

**Warning signs** means any evidence suggesting bribery or non-compliance with this Standard, *The way we work* or the business integrity aspects of an agent, consultant, contractor, advisor or business partner's agreement with Rio Tinto.

**Be alert and speak up.** Rio Tinto personnel must be alert to warning signs in relation to bribery and corruption and raise such warning signs with their line manager or more senior management.

**Reporting is key to compliance.** Any Rio Tinto personnel who are aware of, or are concerned about, an act or suspect activity that may be a violation of this Standard must report the matter to their line manager. If you feel that it would be inappropriate to report the matter to your line manager, you must report it to another member of management, whose position is more senior than yours. The person receiving the report must report the matter to the unit's most senior executive.

**Always report if you are asked to engage in illegal activity.** Any Rio Tinto personnel who:

- are approached, directly or indirectly, to be involved in activity relating to bribery or corruption, or
- suspect activity relating to bribery or corruption,

must immediately report the matter to their line manager.

REMEMBER:
You can:

- talk to your manager or supervisor – this is often the best person to contact first; or
- contact Rio Tinto Compliance; or
- use *Speak-OUT*, our whistle-blowing programme.

For further information, please refer to the guidance in the *Anti-corruption toolkit*.

---

[2] Subject to local laws



## 7.0  Books and records and internal controls

*Rio Tinto's books and records must be accurate.*

**Always record payments correctly and transparently.** Group businesses must have an effective system of internal controls, including financial, accounting and tax accounting systems, to ensure accurate books and records and a true and fair view of their business affairs and to prevent:

- bribery and corrupt practices;
- unrecorded, misidentified or secret accounts; or
- the creation of records which do not properly and fairly record the transactions to which they relate or which omit transactions that should be recorded.

**Management is responsible for compliance.** Line management is responsible to ensure that there are appropriate internal controls in place to prevent and detect violation of this Standard. Section 3.4.1 of the *Fraud standards* applies to this standard.

**Always consider corruption risks in new projects and new countries.** Each Group business must, before it commences any project or any new activity in a nominated country, undertake a compliance risk analysis with a particular emphasis on business integrity and the matters covered in this Standard. The risk analysis must be documented – see section 2.1 of the *Compliance standard*.

NOTE:
Nominated country is a defined term.

**Losses and fines are charged locally.** Any losses due to violation of this Standard must be allocated against the profit/cost centre in which the event occurred.

**Discuss and review corruption controls regularly.** Whenever a Group business conducts an audit forum, it must have as a standing item matters of business integrity including bribery and corruption.

## 8.0  Compliance risk reduction training

*Executives in potential high anti-corruption exposure roles must undertake training to reduce the risks of non-compliance with this Standard.*

For the purposes of this section, the following definitions apply:

**Entrusted role** has the meaning assigned to it in the *Compliance standard*.

**High exposure entrusted roles** include:

a) all Rio Tinto personnel who are likely to confront significant corruption issues in their work. These would include those involved in marketing decisions, procurement decisions, customs clearance, buying and selling of businesses or significant assets, legal advisers, and members of exploration teams who interact with regulatory authorities not previously dealt with, and where such roles are located in, or deal with, nominated countries.

b) line managers of those Rio Tinto personnel; and

c) all employees in Band C and above roles, regardless of location or role.

NOTE:
Nominated country is a defined term.

**Each Group business must:**

a) on the basis of a risk analysis, determine which roles are entrusted roles and identify its employees and core contractors who are in those entrusted roles. Section 3.5.1 of the *Fraud standards* applies to this Standard (including online training of entrusted roles);

b) determine which entrusted roles are high exposure entrusted roles;

c) ensure those high exposure entrusted roles receive instructor led anti-corruption training arranged by Rio Tinto Compliance (and at the required frequency – see paragraphs 3.1.4 to 3.1.8 of the *Compliance standard*);

d) ensure any employee or core contractor being relocated to a nominated country receives instructor led anti-corruption training as arranged by RioTinto Compliance prior to arrival in that country;

## 8.0 Compliance risk reduction training continued

e) ensure:

  i. records of anti-corruption awareness training of high exposure entrusted roles are promptly recorded on the *Prospect* portal (Compliance community), and

  ii. an up to date list of its employees and core contractors in those roles is maintained and provided to Rio Tinto Compliance through the process described on the anti-corruption page of the *Prospect* portal (Compliance community).

## 9.0  Business partner ventures

*Rio Tinto wants all businesses in which it has an interest to adopt and apply similar anti-corruption standards.*

For the purposes of this section, the following definitions apply:

**Rio Tinto's business integrity standards** include *The way we work*, this Standard, the *Business integrity (conflicts of interest) standard* and the *Third party integrity due diligence standard*.

9.1 Each Group business must:

- ensure all of its businesses that are part of the Rio Tinto Group adopt and comply with the Rio Tinto business integrity standards; and

- in respect of any newly acquired or formed majority owned and/or managed ventures:

  – include, in the contractual arrangements, clauses (similar to the clauses in the *Anti-corruption toolkit*) requiring the venture to adopt and comply with Rio Tinto's business integrity standards; and

  – ensure that the venture complies with the clauses in the contractual arrangements and Rio Tinto's business integrity standards.

  Where such clauses cannot be included in the contractual arrangements:

    – the Group executive for the Group business and the global head of Compliance must approve the form of the clauses to be included; and

    – the body approving entry into the contractual arrangements (eg the Board, the Investment Committee) must be advised as to the contractual position in this regard.

  Where there are no such contractual arrangements (eg an on-market takeover):

    – the Group executive for the Group business and the global head of Compliance must approve the timetable for the business to adopt and comply with Rio Tinto's business integrity standards.

## 9.0 Business partner ventures continued

9.2 For any new venture in which the Group business will hold a minority interest and/or which will not be managed by Rio Tinto, each Group business must:

- seek to include, in the contractual arrangements, clauses (similar to the clauses in the *Anti-corruption toolkit*) requiring the venture to adopt and comply with principles and standards substantially similar to Rio Tinto's business integrity standards;

- where such clauses cannot be included in the contractual arrangements,

  - the Group executive for the Group business and the global head of Compliance must approve the form of the clauses to be included; and

  - the body approving entry into the contractual arrangements (eg the Board, the Investment Committee) must be advised as to the contractual position in this regard; and

- monitor the managing business partner and the venture in order to be alert to any increased corruption risk and/or non-compliance with the clauses included in the contractual arrangements.

**Record of revisions**

| Implementation approval: | Document owner: |
|---|---|
| Rio Tinto Executive committee | Rio Tinto Compliance |

**Record of revisions**

| Version no. | Issue date | Nature of amendment | Initials |
|---|---|---|---|
| Business integrity guidance | 2005 | | |
| Business integrity (anti-corruption) standard | 1 January 2012 | New Standard | NT |

**Rio Tinto plc**
2 Eastbourne Terrace
London W2 6LG
United Kingdom

T +44 (0)20 7781 2000

**Rio Tinto Limited**
120 Collins Street
Melbourne, Victoria 3000
Australia

T +61 (0)3 9283 3333

© Rio Tinto plc and Rio Tinto Limited
2012

0007 V1 ANTICOR 19xLANGS 01-ENGLISH JAN2012 PDF